## JENKINS v SOUTHEASTERN MICHIGAN CHAPTER, AMERICAN RED CROSS

Docket No. 70619. Submitted October 9, 1984, at Detroit.—Decided April 15, 1985.

Plaintiff, J. Ralph Jenkins, brought an action in the Wayne Circuit Court against his former employer, Southeastern Michigan Chapter of the American Red Cross, and two of its employees, A. William Shafer, M.D., and Duane E. Johnson. Plaintiff alleged that the defendants constructively discharged him because of his race in violation of the Elliott-Larsen Civil Rights

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 112.

5 Am Jur 2d, Appeal and Error §§ 849, 886.

[2, 3] 15 Am Jur 2d, Civil Rights § 135.

[3] Racial discrimination in labor and employment—Supreme Court cases. 28 L Ed 2d 928.

[4] 15 Am Jur 2d, Civil Rights § 148.

Circumstances in Title VII employment discrimination cases (42 USCS § 2000e *et seq.*) which warrant finding of "constructive discharge" of discriminatee who resigns employment. 55 ALR Fed 418.

[5] 15 Am Jur 2d, Civil Rights §§ 425, 431 *et seq.*

Award of back pay in suit under Title VII of Civil Rights Act of 1964, as amended by Equal Employment Opportunity Act of 1972 (42 USCS § 2000e *et seq.),* for discriminatory employment practices. 21 ALR Fed 472.

[6] 5 Am Jur 2d, Appeal and Error § 837.

[7] 15 Am Jur 2d, Civil Rights § 431 *et seq.*

[8] 15 Am Jur 2d, Civil Rights §§ 98, 102.

[9] 15 Am Jur 2d, Civil Rights § 102.

[10] 15 Am Jur 2d, Civil Rights §§ 446-448.

Construction and Application of Civil Rights (amending 42 USCS § 1988), providing that court may allow prevailing party, other than United States, reasonable attorney's fee in certain civil rights actions. 43 ALR Fed 243.

Award of attorneys' fees under § 706(k) of Civil Rights Act of 1964 (42 USCS § 2000e-5(k)) authorizing court to allow prevailing party, other than Equal Employment Opportunity Commision or United States, reasonable attorney's fee as part of costs in action under equal employment opportunities part of Act. 16 ALR Fed 643.

Act. The trial court, Joseph B. Sullivan, J., denied the defendants' motions for a directed verdict at the close of plaintiff's proofs and at the close of all proofs and denied defendants' motion for a judgment notwithstanding the verdict. The trial court entered a judgment for the plaintiff of $850,000, following the jury's award of that amount in favor of the plaintiff. The defendants appeal from the denial of their motions and the judgment and the plaintiff cross-appeals from the trial court's determination not to award him attorney fees. *Held:*

1. Plaintiff carried his burden of proof sufficient to support an inference that defendants intentionally discriminated against him on the basis of race, or that defendants' actions against plaintiff were motivated by racial considerations. A reasonable factfinder could determine that defendants intentionally made plaintiff's job difficult, and then used his difficulties as a pretext for unfavorable evaluation and demotion. Reasonable minds could differ as to whether plaintiff was treated differently for the same or similar conduct as that of non-minority department heads. There was sufficient evidence of disparate treatment and racial animus to justify submission of the case to the jury. The trial court did not err in denying the motions for directed verdict and for judgment notwithstanding the verdict.

2. The facts indicate that the new position which had been offered to the plaintiff by the defendants was not the substantial equivalent of his former position. Plaintiff was not required to accept the new position. The finding of constructive discharge is supported by the evidence. A reasonable juror could conclude that the foreseeable impact of defendants' conduct was that plaintiff's working conditions would become so difficult and unpleasant that he would be compelled to resign.

3. The trial judge did not abuse his discretion in denying defendants' motion for *remittitur.* The evidence of plaintiff's damages supports the award.

4. The trial court did not err in failing to dismiss the individual defendants, Johnson and Shafer, who were agents of the employer within the meaning of the Elliott-Larsen Civil Rights Act.

5. The Elliott-Larsen Civil Rights Act does not violate the single-object and equal protection clauses of the Michigan Constitution.

6. The trial court properly exercised and did not abuse its discretion in declining to award attorney fees.

Affirmed.

1. APPEAL — DIRECTED VERDICT — JUDGMENT NOTWITHSTANDING THE VERDICT.

The standard of review applicable to a denial of a motion for a

directed verdict or a motion for judgment notwithstanding the verdict is that review by the Court of Appeals is limited to whether the party opposing the motion offered evidence upon which reasonable minds could differ; the test is whether, viewing the facts in a light most favorable to the plaintiff, reasonable persons could reach a different conclusion and, if so, the case is properly one for the jury; the plaintiff must be given the benefit of every reasonable inference that can be drawn from the evidence.

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — BURDEN OF PROOF.

The plaintiff in an employment discrimination case has the burden of proving by the preponderance of the evidence a prima facie case of discrimination; if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason why the plaintiff was rejected, or someone else preferred; should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination; plaintiff may demonstrate pretext either directly, by persuading the jury that a discriminatory reason more likely motivated the employer, or by showing that the proffered reason is not worthy of credence; plaintiff may introduce evidence tending to show other discriminatory treatment by the defendant toward the plaintiff or other similarly situated employees, or a general pattern of discrimination against such employees; the plaintiff retains the burden of persuasion at all times.

3. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — RACE DISCRIMINATION.

There are at least two approaches in Michigan for establishing a prima facie case of race discrimination: to make a prima facie showing of discrimination under the disparate treatment theory, the one alleging disparate treatment must show that he was a member of the class entitled to protection under the Elliott-Larsen Civil Rights Act and that, for the same or similar conduct, he was treated differently than one who was a member of a different race; to make a prima facie case under the intentional discrimination theory, the plaintiff must show that he is a member of the affected class, that he was discharged, and that the person discharging him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.*).

4. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — CONSTRUCTIVE
   DISCHARGE.

   Constructive discharge from employment may be found where
   working conditions would have been so difficult or unpleasant
   that a reasonable person in the employee's shoes would have
   felt compelled to resign; a finding of constructive discharge
   depends on the facts of each case and requires an inquiry into
   the intent of the employer and the reasonably foreseeable
   impact of the employer's conduct on the employee; the em-
   ployer is held to intend the reasonably foreseeable conse-
   quences of his conduct and the plaintiff can make a jury-
   submissible case for constructive discharge by showing discrimi-
   nation plus aggravating circumstances.

5. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — BACK PAY
   AWARDS — SUBSTANTIALLY EQUIVALENT POSITIONS.

   A claimant in an employment discrimination suit need not accept
   a demotion to avoid forfeiture of his right to a back pay award;
   an offered position must give an employee virtually identical
   promotion opportunities, compensation, job responsibilities,
   working conditions and status to be considered the substantial
   equivalent of a position held by the employee.

6. APPEAL — *REMITTITUR* — JURY VERDICTS.

   The Court of Appeals will reverse a trial judge's decision to grant
   or deny *remittitur* only if there was an abuse of discretion; the
   Court will substitute its judgment for that of the jury only
   where the verdict has been secured by improper methods,
   prejudice or sympathy, or where it is so excessive as to shock
   the judicial conscience; the Court will not reverse the verdict as
   excessive and against the great weight of the evidence where
   the verdict is within the range of evidence produced at trial.

7. CIVIL RIGHTS — DAMAGES.

   A victim of discrimination may recover for humiliation, embar-
   rassment, outrage, disappointment and other forms of mental
   anguish which flow from the discrimination.

8. CIVIL RIGHTS — EMPLOYER — AGENT.

   An employer is defined in the Elliott-Larsen Civil Rights Act as a
   person who has one or more employees, and it includes an
   agent of that person; a person who has responsibility for
   making personnel decisions for the employer is an agent within
   the meaning of the act (MCL 37.2201[a]; MSA 3.548[201][a]).

9. CONSTITUTIONAL LAW — ELLIOTT-LARSEN CIVIL RIGHTS ACT.

   The Elliott-Larsen Civil Rights Act does not violate the single-

object and equal protection clauses of the Michigan Constitution (Const 1963, art 1, § 2, and art 4, § 24).

10. CIVIL RIGHTS — ELLIOTT-LARSEN CIVIL RIGHTS ACT — ATTORNEY FEES.

The decision to grant or deny an award of attorney fees under a section of the Elliott-Larsen Civil Rights Act pertaining thereto is discretionary with the trial court (MCL 37.2802; MSA 3.548[802]).

*Michael A. Conway, Daniel J. Henry, Jr.,* and *Gromek, Bendure & Thomas* (by *Daniel J. Wright* and *Dani K. Kurzman),* of counsel, for plaintiff.

*Clark, Klein & Beaumont* (by *M. V. Keil* and *Donald A. Van Suilichem)* for defendants.

Before: WAHLS, P.J., and BEASLEY and P. J. MARUTIAK,* JJ.

P. J. MARUTIAK, J. Defendants appeal as of right from a judgment entered on a jury award in favor of plaintiff in the amount of $850,000. Plaintiff's suit alleged race discrimination in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* against his former employer, the Southeastern Michigan Chapter of the American Red Cross, and two of its employees, A. William Shafer, M.D., and Duane E. Johnson.[1]

Plaintiff began his career at the Red Cross in 1948 as a Staff Technologist in the blood program. By 1958, he had advanced to Chief Medical Technologist. In 1964, he was appointed Assistant Administrator of the blood center. Over the years,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The lawsuit was commenced in August, 1979, against defendants-appellants and two volunteer chapter chairmen of the Red Cross. In addition to race discrimination, plaintiff alleged age discrimination, tortious interference with contract relations, injurious falsehood, libel and conspiracy. At the close of plaintiff's proofs, all claims against the chapter chairmen were dismissed and all claims except race discrimination were dismissed against defendants-appellants.

plaintiff received excellent evaluations from his supervisors. In 1970, he was promoted to Blood Program Administrator. Executive Director Robert G. Wick, plaintiff's supervisor during those years, praised him for his performance in that position on several occasions.

As Blood Program Administrator, plaintiff was responsible for the entire Red Cross Blood Center. His duties included heading donor resources development, the nursing department, the blood center laboratory, blood distribution, vehicle maintenance, donor records, electronic data processing, supplies and purchasing, and overseeing the mobile unit assistance drivers.

In the fall of 1974, Wick was succeeded as Executive Director by defendant Johnson. Defendant Shafer became Medical Director and plaintiff's immediate supervisor in October, 1975. Shafer was responsible for operating the entire blood center. Shafer immediately took over responsibilities which had previously been plaintiff's, and by 1975, plaintiff's areas of responsibility had greatly decreased.

Shafer did not evaluate plaintiff's job performance in 1975 or 1976, and plaintiff received merit pay increases in those years. On June 5, 1977, Shafer issued plaintiff's first critical evaluation, in which he criticized plaintiff for inadequate supervision, overestimation of his subordinates and inadequate formulation and adherence to plans. Plaintiff's June, 1977, evaluation was the only negative one handed down by Shafer; the other department heads were deemed adequate or more than adequate in all areas.

Plaintiff responded that the evaluation was not a fair assessment, that he had not been permitted to function in the role of administrator, and had not been provided with specific information about

his asserted deficiencies. Plaintiff protested the evaluation to Personnel Director Waymon Hughey. In October, 1977, plaintiff and Shafer met, and the new position of Director of Blood Program Relations was discussed. Shafer indicated that the salary would be equal to plaintiff's current salary and that he would receive use of a car and a small expense account. Shafer urged plaintiff to accept the position.

Plaintiff told Shafer on October 19, 1977, that he was not interested in the position. Shafer said that he was dissatisfied with plaintiff's performance as Blood Program Administrator and wanted to find another position for plaintiff so that he could hire a new administrator. Plaintiff told Shafer that he did not want to be forced into a fast decision about his career. Shafer said he expected an answer by November 7, 1977. On November 18, 1977, Shafer stated that plaintiff would have to either accept the transfer or resign.

Plaintiff met with defendant Johnson, who eventually determined that Shafer had acted within the scope of his authority. Plaintiff then requested a hearing before the Chapter Appeal Board, and the hearing was held in December, 1977. In the meantime, plaintiff commenced sick leave from his position as Blood Program Administrator.

In March, 1978, the appeal board chairman advised plaintiff that his new position awaited him. Johnson warned plaintiff on March 22, 1978, to accept the new job or be deemed to have resigned. Plaintiff wrote to Johnson on March 24, 1978, that he would not report to Shafer and would not resign. On June 23, 1978, plaintiff was terminated for failure to report to work.

I

Defendants' motions for directed verdict at the

close of plaintiff's proofs and at the close of all proofs, and motion for judgment notwithstanding the verdict, were denied by the trial court. Defendants contend that they were entitled to a directed verdict or judgment notwithstanding the verdict because plaintiff failed to produce enough evidence to establish a case of race discrimination sufficient to send to the jury.

This Court's review of a denial of a motion for a directed verdict is limited to whether the party opposing the motion offered evidence upon which reasonable minds could differ. *Perry v Hazel Park Harness Raceway,* 123 Mich App 542, 549; 332 NW2d 601 (1983). The test is whether, viewing the facts in a light most favorable to plaintiff, reasonable persons could reach a different conclusion. If so, the case is properly one for the jury. Plaintiff must be given the benefit of every reasonable inference that could be drawn from the evidence. *Anderson v Gene Deming Motor Sales, Inc,* 371 Mich 223, 229; 123 NW2d 768 (1963). The same standard of review applies where a motion for judgment notwithstanding the verdict has been denied. *Anderson, supra; Goins v Ford Motor Co,* 131 Mich App 185, 191-192; 347 NW2d 184 (1983).

It was plaintiff's theory that defendants constructively discharged him and destroyed his 30-year career with the Red Cross in violation of § 202 of the Elliott-Larsen Civil Rights Act, MCL 37.2202; MSA 3.548(202), which provides in part:

"(1) An employer shall not:

"(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

"(b) Limit, segregate, or classify an employee or appli-

cant for employment in a way which deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status."

The burden of proof in an employment discrimination case was stated in *Texas Dep't of Community Affairs v Burdine,* 450 US 248, 252-253; 101 S Ct 1089; 67 L Ed 2d 207 (1981), reaffirming the holding of *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973):[2]

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' * * * Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

In Michigan, there are at least two approaches for establishing a prima facie case of race discrimination: the disparate treatment theory and the intentional discrimination theory. These were described in *Schipani v Ford Motor Co,* 102 Mich App 606, 617; 302 NW2d 307 (1981):

"(1) Disparate treatment. To make a *prima facie* showing of discrimination, the one alleging disparate treatment must show that he was a member of the class entitled to protection under the act and that, for the same or similar conduct, he was treated differently than

---

[2] It is appropriate to rely on federal precedent in deciding discrimination cases. See *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 375, fn 4; 263 NW2d 376 (1977).

one who was a member of a different race. *Pompey v General Motors Corp,* 385 Mich 537, 542, 549; 189 NW2d 243 (1971). (2) Intentional discrimination. Here, plaintiff must show that he was a member of the affected class, that he was discharged, and that the person discharging him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him. *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 373, fn 3; 263 NW2d 376 (1977)."

Plaintiff retains the burden of persuasion at all times. *Burdine, supra,* p 255. Plaintiff's burden is to show by a preponderance of the evidence that he was constructively discharged because of race, but he need not show that race was the exclusive cause. See *Gallaway v Chrysler Corp,* 105 Mich App 1, 5-6; 306 NW2d 368 (1981), *lv den* 413 Mich 853 (1982). A prima facie case may be established by circumstantial evidence.

Under the *McDonnell Douglas* formula, the plaintiff's initial burden is to show by a preponderance of the evidence that a prima facie case of discrimination exists. See *Clark v Uniroyal Corp,* 119 Mich App 820, 824; 327 NW2d 372 (1982). If plaintiff satisfies the burden, it shifts to defendants to articulate some legitimate nondiscriminatory reason why plaintiff was rejected, or someone else preferred. *Burdine, supra,* p 254; *Clark v Uniroyal, supra,* p 824. Plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons articulated were not defendants' true reasons, but were a pretext for discrimination. Plaintiff may demonstrate pretext either directly, by persuading the jury that a discriminatory reason more likely motivated the employer, or by showing that the proffered reason is not worthy of credence. *Burdine, supra,* p 255; *Clark v Uniroyal, supra,* p 825. Plaintiff may introduce evi-

dence tending to show other discriminatory treatment by the defendants toward the plaintiff or other similarly situated employees, or a general pattern of discrimination against such employees. *Clark v Uniroyal, supra,* p 825, citing *Boyd v Madison County Mutual Ins Co,* 653 F2d 1173, 1178 (CA 7, 1981).

Applying these standards and viewing the evidence at trial in a light most favorable to plaintiff, we are persuaded that plaintiff carried his burden of proof sufficient to support an inference that defendants intentionally discriminated against him on the basis of race, or that defendants' actions against plaintiff were motivated by racial considerations.

Plaintiff's position was that he was constructively discharged from his employment and that defendants' actions were motivated by racial prejudice. Viewing the evidence in a light most favorable to plaintiff, a reasonable factfinder could determine that defendants intentionally made plaintiff's job difficult, and then used his difficulties as a pretext for unfavorable evaluation and demotion. Reasonable minds could differ as to whether plaintiff was treated differently for the same or similar conduct as that of non-minority department heads. We believe that there was sufficient evidence of disparate treatment and racial animus to justify submission of the case to the jury. The trial court did not err in denying the motions for directed verdict and for judgment notwithstanding the verdict.

## II

Defendants next contend that the jury award should be set aside because plaintiff failed to mitigate his damages by accepting the proffered posi-

tion of Director of Blood Program Relations.[3] Defendants assert that the job offered to plaintiff was substantially equivalent to his former position as Blood Program Administrator. Defendants assert that plaintiff was not constructively discharged, because no reasonable person in his position would have felt compelled to resign. Defendants conclude that the trial court erred in submitting the issue of pecuniary damages to the jury. We do not agree.

Constructive discharge may be found where working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Held v Gulf Oil Co,* 684 F2d 427, 432 (CA 6, 1982); *Clark v Marsh,* 214 US App DC 350, 355; 665 F2d 1168, 1173 (1981); *Jacobs v Martin Sweets Co, Inc,* 550 F2d 364 (CA 6, 1977), *cert den* 431 US 917 (1977); *LeGalley v Bronson Community Schools,* 127 Mich App 482, 487; 339 NW2d 223 (1983). A finding of constructive discharge depends on the facts of each case. *Held, supra; Jacobs, supra.* Constructive discharge requires inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee. *Held, supra.* An employer is held to intend the reasonably foreseeable consequences of his conduct. *Id.* Plaintiff can make a jury-submissible case for constructive discharge by showing discrimination plus aggravating circumstances. See *Bourque v Powell Electrical Manufacturing Co,* 617 F2d 61 (CA 5, 1980); *Clark v Marsh, supra,* 214 US App DC 350, 355-356; 665 F2d 1168, 1173-1174.

In the present case plaintiff was told that he would have to either accept the position of Direc-

---

[3] Plaintiff did mitigate his damages to some extent by accepting a position as Wayne County Rat Inspector at an annual salary of $17,500.

tor of Blood Program Relations or resign. The proffered position involved responsibility for hospital-client relationships, responsibility for the blood center distribution department, involvement in blood center planning and development, and involvement in analysis and development of blood center relationships with regional and national blood programs. The job was originally budgeted at a $20,000 annual salary, but was subsequently offered to plaintiff at his $30,000 salary. The position was ultimately filled 1-1/2 years later at a salary of $17,500. The position no longer exists, although defendant Shafer testified that the functions are still in existence.

Shafer originally told plaintiff that the job was equivalent to jobs held by other department heads and that it was an important position. Shafer told a civil rights investigator that the job was a demotion and that the car and expense account were added to induce plaintiff to view it as a promotion.

Defendants argue that there was no constructive discharge because the position offered to plaintiff was the substantial equivalent of his position as Blood Program Administrator. The "substantial equivalent" of the position from which a claimant is discriminatorily discharged must give him virtually identical promotion opportunities, compensation, job responsibilities, working conditions and status. *Rasimas v Michigan Dep't of Mental Health,* 714 F2d 614, 624 (CA 6, 1983), citing *Ford Motor Co v Equal Employment Opportunity Comm,* 458 US 219; 102 S Ct 3057; 73 L Ed 2d 721 (1982). The claimant need not accept a demotion to avoid forfeiture of his right to a back pay award. *Rasimas, supra,* p 624.

In view of the testimony that the new position offered to plaintiff was a demotion and that his responsibilities were severely reduced after Shafer

arrived, we believe a reasonable factfinder could conclude that the new position was not the substantial equivalent of the position of Blood Program Administrator.

We conclude that a finding of constructive discharge is supported by the evidence and that plaintiff was not required to accept the position offered to him. A reasonable juror could conclude that the foreseeable impact of defendants' conduct was that plaintiff's working conditions would become so difficult and unpleasant that he would be compelled to resign.

### III

Defendants next contend that the jury award must be set aside because it was based on speculation and passion. Defendants assert that the verdict was excessive and that the trial court erred in denying their motion for *remittitur.*

This Court will reverse a trial judge's decision to grant or deny *remittitur* only if there was an abuse of discretion. *Stevens v Edward C Levy Co,* 376 Mich 1, 6; 135 NW2d 414 (1965); *Gillispie v Board of Tenant Affairs of the Detroit Housing Comm,* 122 Mich App 699, 704; 332 NW2d 474 (1983), *lv den* 417 Mich 1100.37 (1983). A reviewing court will substitute its judgment for that of the jury only where the verdict has been secured by improper methods, prejudice or sympathy, or where it is so excessive as to "shock the judicial conscience". *Gillispie, supra.* Where a verdict is within the range of evidence produced at trial, this Court will not reverse it as excessive and against the great weight of evidence. *Kovacs v Chesapeake & O R Co,* 134 Mich App 514, 542; 351 NW2d 581 (1984).

Upon a review of the record, we conclude that

the trial judge did not abuse his discretion in denying *remittitur.* It is well established that victims of discrimination may recover for humiliation, embarrassment, outrage, disappointment and other forms of mental anguish which flow from the discrimination. See *Slayton v Michigan Host, Inc,* 122 Mich App 411, 416-417; 332 NW2d 498 (1983). In this case, assuming that the jury accepted plaintiff's calculation of $362,000 for lost wages, approximately $500,000 of the verdict was for noneconomic damages. We find that the evidence of plaintiff's damages supports the award. Defendants have failed to assert facts which suggest any impropriety or prejudice on the part of the jury. *Gillispie, supra.*

## IV

Defendants next contend that the trial court erred in failing to dismiss individual defendants Johnson and Shafer. We do not agree.

An employer is defined in the Elliott-Larsen Civil Rights Act as a person who has one or more employees, and it includes an agent of that person. MCL 37.2201(a); MSA 3.548(201)(a). Defendants Johnson and Shafer moved for a directed verdict on the ground that they were not employers within the meaning of § 201(a). The trial court denied the motions, relying on *Munford v James T Barnes & Co,* 441 F Supp 459 (ED Mich, 1977).

We find that *Munford* controls and that the trial court properly denied the motions for a directed verdict. The *Munford* court construed Title VII of the Civil Rights Act of 1964, 42 USC 2000e(b), which defines an employer as one who has 15 or more employees and includes any agent of such a person. The court held that if a person has responsibility for making personnel decisions for the

company, he is an agent within the statutory definition of an employer, at least for that purpose. *Munford, supra,* p 466. We find that, under *Munford,* defendants Shafer and Johnson were responsible for making personnel decisions affecting plaintiff, and were agents within the meaning of § 201(a). This Court has examined defendants' attempts to distinguish *Munford* and policy arguments against application of *Munford* in the present case, and finds them to be without merit.

## V

Defendants finally contend that the Elliott-Larsen Civil Rights Act is in violation of the single-object and equal protection clauses of the Michigan Constitution. Const 1963, art 1, § 2, and art 4, § 24. For the reasons set forth in *Seals v Henry Ford Hospital,* 123 Mich App 329; 333 NW2d 272 (1983), we reject that contention.

## VI

Plaintiff argues in his cross-appeal that the trial court abused its discretion in failing to award reasonable attorney fees under the Elliott-Larsen Civil Rights Act. MCL 37.2802; MSA 3.548(802) provides:

"A court, in rendering a judgment in an action brought pursuant to this article, may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate."

The decision to grant or deny an award of attorney fees under this section is discretionary

with the trial court. *King v General Motors Corp,* 136 Mich App 301, 308; 356 NW2d 626 (1984). The purpose of the provision is to encourage persons deprived of their civil rights to seek legal redress, to ensure victims of employment discrimination access to the courts, and to obtain compliance with the act and thereby deter discrimination in the work force. *King, supra,* pp 307-308.

In the present case, we find that the trial court properly exercised and did not abuse its discretion in declining to award attorney fees. *Wood v Detroit Automobile Inter-Insurance Exchange,* 413 Mich 573, 588; 321 NW2d 653 (1982); *King, supra.*

Our resolution of this case makes it unnecessary to address the remaining two issues raised in plaintiff's cross-appeal.

Affirmed.