## JACOBS v ST CLAIR COUNTY

Docket No. 92530. Submitted June 9, 1987, at Detroit. Decided September 21, 1987.

Plaintiff, Rita Jacobs, worked for the St. Clair County Comprehensive Employment Training Act program funded by grants distributed by the United States Department of Labor from funds appropriated by Congress. Plaintiff was hired as an independent monitor to monitor the administration of CETA programs in the county. Plaintiff faced obstruction, delay and hostility in performing her duties. She resigned and brought an action against St. Clair County in the St. Clair Circuit Court on a theory of constructive discharge. A jury awarded plaintiff a judgment exceeding $68,000 for lost earnings, damages for mental anguish, costs and interest. The trial court, Ernest F. Oppliger, J., entered a judgment and order in accordance therewith and also denied defendant's motion for a judgment notwithstanding the verdict. Defendant appealed.

The Court of Appeals *held:*

1. Defendant's motion for judgment notwithstanding the verdict should have been granted. Plaintiff did not fulfill her duties pursuant to the terms of the regulations and procedures governing her employment. Sufficient evidence was not presented such that a factfinder could properly find that plaintiff felt compelled to resign. Even if plaintiff's subjective view of her situation motivated her to resign, she had no cause to do so which would allow for recovery. Defendant's behavior was not so egregious as to force plaintiff to resign. There is no evidence that showed that defendant's behavior was designed to coerce plaintiff's resignation. Plaintiff was not constructively discharged.

2. The damage award for mental distress is reversed since

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 920 *et seq.*; 1830 *et seq.*

Circumstances in Title VII employment discrimination cases (42 USCS §§ 2000e *et seq.)* which warrant finding of "constructive discharge" of discriminatee who resigns employment. 55 ALR Fed 418.

the evidence does not support plaintiff's claim that she was discharged.

Reversed.

1. Labor Relations — Constructive Discharge from Employment.

The issue of constructive discharge from employment depends on the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.

2. Labor Relations — Constructive Discharge from Employment.

One who is hired by an employer to police fraud and corruption by other employees cannot sue the employer on a constructive discharge theory when the employee resigns after he encounters behavior by the other employees designed to control the employee's access to information delineating their negligence or malfeasance where such fraud or corruption is found to exist at a level below that of the highest level to which the employee may report wrongdoing.

*Walsh, Thomas & Walke* (by *Wm. R. Walsh, Jr.*), for plaintiff.

*Robert H. Cleland* and *Peter R. George,* Corporation Counsel, and *O'Reilly, Rancilio, Nitz, Andrews & Turnbull, P.C.* (by *Frank Krycia*), of Counsel, for defendant.

Before: Shepherd, P.J., and M. J. Kelly and C. M. Forster,* JJ.

Shepherd, P.J. Plaintiff sued defendant on a theory of constructive wrongful discharge by a complaint filed in 1981 and subsequently amended. After a six-day jury trial conducted in March, 1986, plaintiff was awarded a judgment in excess of $68,000 for lost earnings, damages for mental anguish, costs, and interest at twelve percent. We reverse.

Plaintiff began working for the St. Clair County Comprehensive Employment Training Act (CETA)

---

* Circuit judge, sitting on the Court of Appeals by assignment.

program in September, 1979. The CETA program was funded by grants distributed by the United States Department of Labor (DOL) from funds appropriated by Congress. Plaintiff was hired as an independent monitor (IMU), a position created by a 1978 amendment to CETA. The IMU was to monitor the administration of CETA programs. "Prime Sponsors," i.e., those receiving grants directly from the DOL, including defendant, were *required* by regulation to implement IMUs to detect fraud and abuse. CETA Regulations, 44 Fed Reg 19,990 (1979) (to be codified at 20 CFR §§ 675-679). The monitoring unit was charged with the duty to "report to a level of management such as the CETA director or the chief-elected official, which will be high enough to ensure adequate monitoring coverage and appropriate action on findings and recommendations." 44 Fed Reg, *supra* at 20,030.

There is no question from the record that plaintiff faced obstruction, delay and even hostility in her role as monitor. One witness testified that Richard Bingham, then director of the St. Clair County CETA program, referred to plaintiff as the "in-house fed" and as a "spy" and told staff not to cooperate with plaintiff.

Plaintiff testified to long periods of delay and noncooperation in obtaining information necessary in putting together her reports. Plaintiff testified that the supervisor of the Public Service Employment Department at CETA screamed at her to "keep her nose out of his business" after she discovered that participants in his programs had not submitted applications, contrary to regulations. She also testified that he kept necessary records under lock and key. She testified to noncompliance with her information requests by other CETA supervisors. She testified that Bingham often did not respond to her memos and reports, con-

trary to CETA regulations. In addition, she testified that Bingham regularly failed to answer her phone calls.

Plaintiff found widespread noncompliance with CETA regulations. For example, she found many applicants receiving funding to which they were not entitled. Even more significant, plaintiff was told by several CETA employees of abuse and kickbacks involving director Bingham, specifically a boat made available for his personal use provided by one of the subrecipients (an organization receiving financial assistance under CETA through a prime sponsor such as defendant). A car had also been made available for the personal use of CETA employees by one of the subrecipients. There was also testimony that Bingham spent many work hours at a bar called "Fog Cutter."

Plaintiff became increasingly troubled by what was apparently widespread fraud and abuse in the St. Clair County CETA program. Shortly before she resigned, plaintiff contacted a federal representative in Chicago who apparently indicated to plaintiff that she could not expect much help from DOL. Plaintiff resigned by letter on January 21, 1980.

Bingham, in his testimony, denied allegations of corruption and testified that he asked plaintiff to return to work after receiving her resignation letter.

Gregory Howe, plaintiff's replacement, also testified. He indicated that he occasionally reported to DOL when he encountered problems with the St. Clair County CETA program. While he occasionally had difficulty getting information or documents, he was able to get what he wanted through persistent demands.

I

Defendant argues that there was not enough

evidence of constructive discharge to submit the case to the jury. Defendant's directed verdict motion and motion for judgment notwithstanding the verdict were denied.

A judgment notwithstanding the verdict on a defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff. *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 695; 310 NW2d 26 (1981). In reaching a decision, the trial court must view the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference that could be drawn from the evidence. If, after viewing the evidence in this manner, reasonable people could differ, the question is one for the jury and judgment notwithstanding the verdict is improper. *Napier v Jacobs,* 145 Mich App 285; 377 NW2d 879 (1985).

The issue of constructive discharge depends on the facts of each case and "requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee." *Held v Gulf Oil Co,* 684 F2d 427, 432 (CA 6, 1982). See also *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785; 369 NW2d 223 (1985); cf. *Muller v United States Steel Corp,* 509 F2d 923, 929 (CA 10, 1975), cert den 423 US 825; 96 S Ct 39; 46 L Ed 2d 41 (1975).

In this case, we believe defendant's motion for judgment notwithstanding the verdict should have been granted. To maintain eligibility for CETA funds, a prime sponsor was required to implement monitoring procedures to eliminate fraud and abuse. We emphasize the language of the regulation:

Prime sponsors, as part of their internal pro-

gram management procedures, shall establish a
monitoring unit which shall be independent of,
and not accountable to, any unit being monitored.
*This unit shall report to a level of management
such as* the CETA director or *the chief-elected offi-
cial, which will be high enough to ensure adequate
monitoring coverage and appropriate action on
findings and recommendations.* [44 Fed Reg, *supra*
at 20,030.]

The regulation specifically provided that the IMU
report to a management level high enough to
ensure appropriate action on findings. We further
note that the IMU manual, introduced at trial,
provided for the production of Questionable Activi-
ties Reports involving "problems of high sensitiv-
ity and/or public visibility, which need to be called
to the attention of the highest level of prime
sponsor management."

Thus, even by the terms of the regulations and
procedures governing her employment, plaintiff
did not fulfill her duties. Plaintiff's function, in
part, was to discover and *report* malfeasance.
Given this function, plaintiff could well have ex-
pected some interference. Rather than report the
activities of Bingham and others to high St. Clair
County officials, or to appropriate DOL officials,
plaintiff resigned.

We hold that plaintiff cannot recover under a
theory of constructive discharge on these facts. We
do not believe sufficient evidence was presented
such that a factfinder could properly find that
plaintiff felt compelled to resign. *Jenkins, supra;
Held, supra.* Even if plaintiff's subjective view of
her situation motivated her to resign, she had no
cause to do so which would allow for recovery. One
who is hired by an employer (the county) to police
fraud and corruption cannot sue the employer on a
constructive discharge theory because fraud and

corruption are found to exist at a level below that of the highest level to which the employee may report wrongdoing. Thus, defendant's behavior was not so egregious as to force plaintiff to resign. See *Duerksen v Transamerica Title Ins Co,* 189 Cal App 3d 647; 234 Cal Rptr 521 (1987). We can also find no evidence that showed that defendant's behavior was designed to coerce her resignation. *Muller, supra.* Plaintiff's position was mandated by federal regulations. Clearly, the behavior of director Bingham and others was designed to control plaintiff's access to information delineating their negligence or malfeasance. But this is the sort of behavior plaintiff was hired to report. She failed to do so and resigned. We do not believe she was constructively discharged. We reverse the judgment in her favor.

II

In addition to finding in favor of plaintiff on the constructive wrongful discharge issue, the jury also found:

> We, the Jury, find in favor of the Plaintiff, Rita Jacobs, that the Defendant's conduct was intentional and malicious and assess her mental anguish damages at $6,000.

Plaintiff does not argue that defendant's actions constituted the independent tort of intentional infliction of emotional distress. See, e.g., *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 602; 374 NW2d 905 (1985).

Plaintiff argues that damages for mental and emotional distress are proper in cases where a plaintiff is discharged in violation of public policy. Plaintiff relies on *Sventko v Kroger Co,* 69 Mich

App 644; 245 NW2d 151 (1976), and *Goins v Ford Motor Co,* 131 Mich App 185; 347 NW2d 184 (1983), lv den 424 Mich 879 (1986). Both of these cases found that the plaintiff's tort cause of action was proper because the plaintiff in those cases had been discharged for filing workers' compensation claims, i.e., for exercising a statutory right. In *Goins,* we recognized an exception to the terminable-at-will rule in at-will employment contracts "where a discharge violates a recognized public policy or the worker's statutory rights." *Goins* at 193. Plaintiff argues that she was constructively discharged in violation of public policy, apparently concluding that because CETA was federally funded her discharge from such employment was in violation of public policy. Plaintiff argues that in a tort action actual compensable damages are allowable for mental distress. See *Veselenak v Smith,* 414 Mich 567, 574; 327 NW2d 261 (1982).

Since we hold that the evidence does not support plaintiff's claim that she was discharged, the key element in her Count II claim for damages for mental distress is absent. Therefore, we also reverse plaintiff's Count II damage award. Our disposition does not require us to review defendant's other claims of error.

Reversed.