Carolyn DAVIS, Plaintiff,

v.

PIONEER SCREW & NUT CO., Defendant.

Civ. A. No. 88–CV–71133–DT.

United States District Court, E.D. Michigan, S.D.

Feb. 16, 1989.

David Y. Klein, Livonia, Mich., for plaintiff.

Paul E. Bateman, Chicago, Ill., and Eric L. Clay, Detroit, Mich., for defendant.

## OPINION

DUGGAN, District Judge.

Plaintiff brought this diversity action against defendant, her former employer, complaining that she had been constructively discharged as a result of defendant's sexually discriminatory practices in violation of the Elliott–Larsen Civil Rights Act, M.C.L.A. 37.2101 *et seq.*, specifically, section 202 thereof. *See* M.C.L.A. 37.2202.[1] Defendant presently moves for summary judgment pursuant to Fed.R.Civ.P. 56, arguing that plaintiff's complaint is factually unfounded.

At the center of this lawsuit are defendant's decisions denying plaintiff promotion to the position of *outside* sales representative. Defendant's Detroit office was staffed, in part, with such representatives

---

1. In plaintiff's words,

[d]efendant refused to train, refused to allow opportunity for promotion, constructively discharged and otherwise discriminated against [her] with respect to ... employment ... [on account of sex].

Complaint, § 22. At oral argument, plaintiff's counsel indicated that the references in the complaint to defendant's failure to train and promote were *not* to be construed as separate claims, but as factual allegations supporting the constructive discharge claim. Accordingly, the Court treats the controversy before it as a constructive discharge action.

to initiate orders with auto manufacturers and suppliers for its product, cold-headed fasteners. Having served with distinction as an *inside* sales person [2] and successfully discharged the responsibilities of the one outside account given her, plaintiff contends that she was eminently qualified for, and had been verbally assured of, an outside sales representative position; nevertheless, she was passed over when vacancies arose. Plaintiff directs the Court's attention to two episodes.

The first witnessed the promotion of inside sales person *assistant* Alex Shimkus to outside representative for eastern Michigan auto subcontractors. Shimkus had been designated as *plaintiff's replacement* upon her promotion to an outside representative position. Thus, Shimkus had "leapfrogged" plaintiff who, in turn, considered defendant's accompanying explanation a pretext for sex discrimination.[3]

The second episode also involved Shimkus. After a former supervisor promised plaintiff the prestigious Buick–Oldsmobile–Cadillac outside representative account, the account was given to Shimkus on the strength of his recently gained experience as representative for auto subcontractors. Defendant's reasoning was again communicated to plaintiff who, again, objected. In her view Shimkus received favorable treatment, specifically, on-the-job training.

Believing her career goals to be blocked by defendant's alleged discrimination, plaintiff resigned four months after this second episode, despite management requests that she stay and overtures that a Chicago-based position could be arranged for her. This lawsuit followed. As noted earlier, defendant now moves for summary judgment.

Summary judgment will be granted

---

**2.** The position of inside sales person, like that of outside representative, demanded product familiarity, knowledge of customer operations, etc., and, by defendant's own admission, often acted as a stepping stone to the outside representative position.

**3.** Noting that the accounts assigned to the position Shimkus was awarded were not serviced

if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The United States Supreme Court has elaborated:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element. . . .

*Celotex Corp. v. Cattrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed. 2d 265 (1986).

■ Turning to the substantive issue of this lawsuit, case law teaches that

[c]onstructive discharge may be found where working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.

*Jenkins v. Southeastern Michigan Chapter, American Red Cross,* 141 Mich.App. 785, 796, 369 N.W.2d 223 (1985) (citations omitted). Where discrimination is charged, a "[p]laintiff can make a jury-submissible case by showing discrimination plus aggravating circumstances." *Ibid.* (Citations

(regularly, at least) by plaintiff, defendant explained that it did not want two inexperienced employees in the Detroit office simultaneously. Plaintiff was, and remains, unconvinced. Simply put, plaintiff suggests that she was less inexperienced than Shimkus; thus, her promotion would have posed fewer problems in terms of training, business disruption, etc.

omitted). "Proof of discrimination alone is not a sufficient predicate for a finding of constructive discharge; there must be other 'aggravating factors.'" *Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir.1984). Here, defendant argues, the facts, even when cast in a light most favorable to plaintiff as they must, *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), reveal a failure to promote *unaccompanied* by other indicia of wrongful conduct and, accordingly, do not give rise to constructive discharge liability. This Court agrees.

While the reported decisions are fact sensitive, it is nonetheless helpful to compare the claims of successful litigants to plaintiff's. In *Easter v. Jeep Corp.*, 750 F.2d 520 (6th Cir.1984), the complainant had been told, *inter alia*,

> that women had no business telling men what to do, that women were useful only as sex objects, and that she should be humble.

*Id.* at 523. Moreover, threats were also made against her family. *Ibid.*

The facts in *Held v. Gulf Oil Co.*, 684 F.2d 427 (6th Cir.1982) are also illustrative. In the court's words,

> plaintiff was subjected to various forms of treatment indicating sex-based opprobrium, including statements implying that her sexual charms had something to do with sales, ... constant lectures pertaining to her sex life, and her use by management as an errand girl.

*Id.* at 432.

Plaintiff relies exclusively on the recent decision of *Bruhwiler v. University of Tennessee*, 859 F.2d 419 (6th Cir.1988), in support of her claim that she was constructively discharged. The facts in *Bruhwiler*, like *Held* and *Easter*, differ substantially from the facts of this case. In *Bruhwiler*, the majority of the court (Judge Nelson, dissenting,) held that the trial court's conclusion that plaintiff was constructively discharged was not clearly erroneous. The district court determined that plaintiff had been constructively discharged because of a "pattern of sexual harassment", plaintiff's "inability to obtain administrative relief" for her grievances, and her supervisor's suggestion that she "look for work elsewhere." 859 F.2d at 420.

Plaintiff, in this case, can point to no "aggravating circumstances" that compare with those relied upon by the appellate courts in *Held, Easter,* and *Bruhwiler.* There is no evidence of any sexual "harassment", nor evidence that she was advised to look elsewhere for employment or given unfavorable performance evaluations. Plaintiff's evidence, looked at in its most favorable light, supports only a conclusion that she was twice denied a promotion which had been previously promised to her and that such denial was based on the fact that she is a woman. As previously stated, such evidence does not establish constructive discharge without more, i.e., aggravating circumstances. *Geisler, supra,* at 996.

■ In sum, the test this Court must apply is an *objective* one, assessing the reasonableness of a resignation and, relatedly, the gravamen of the aggravating circumstances, if any, present in addition to the alleged discrimination. Here, plaintiff believed—based on defendant's broken promises and the purportedly preferential treatment given her male colleague, Alex Shimkus—that she would not be promoted to an outside sales representative position and resigned. Her *subjective* belief, however, does not translate into a cause of action for constructive discharge.

For the reasons stated above, defendant's Motion for Summary Judgment is GRANTED.

An order consistent with this Opinion shall issue forthwith.