Colleen R. STORCH and Michael J. Storch, Plaintiffs,

v.

BEACON HOTEL CORPORATION, Defendant.

Civ. A. No. 89–72522.

United States District Court, E.D. Michigan, S.D.

April 6, 1992.

Cary S. McGehee, Kelman Loria, Detroit, Mich., for plaintiffs.

Dennis M. Barnes, Barris Sott, Detroit, Mich., Karl M. Terrell, Stokes Lazarus, At-lanta, Ga., Jonathan W. Greenbaum, Reid & Priest, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S JULY 26, 1991 MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S SEPTEMBER 26, 1991 RENEWED MOTION FOR SUMMARY JUDGMENT AS TO COUNT III

GADOLA, District Judge.

On July 26, 1991, defendant Beacon Hotel Corporation ("Beacon") filed a motion for summary judgment as to Counts I and IV of the complaint. Plaintiffs filed a response August 23, 1991; defendant filed a reply September 4, 1991. Plaintiffs then filed a supplement brief in opposition to defendant's motion for summary judgment September 11, 1991. Defendant subsequently filed a renewed motion for summary judgment as to Count III of the complaint on September 26, 1991, to which plaintiffs responded on October 16, 1991. Oral argument was heard February 6, 1992.

### BACKGROUND FACTS [1]

Plaintiff Colleen Storch began her employment with Days Inn as a front office manager on November 24, 1986. Defendant Beacon is the parent company of Days Inn, which was originally a defendant in this action. The parties have agreed that Beacon was plaintiff's "employer." Consequently, any reference to Days Inn will be construed as applying to Beacon. Plaintiff worked continuously for Days Inn from November 1986 to July 1988.

In October 1987 Gary Rogers, Days Inn's assistant general manager, was transferred to another hotel. In March 1987 Arthur Knox, Days Inn's general manager and originally a defendant in this action, told plaintiff that he would be training her for the assistant general manager position. The complaint alleged that in December 1987 Knox dissuaded plaintiff from apply-

---

1. The following statement of facts is taken from the court's opinions of February 6, 1990, and April 23, 1990.

ing for a position at a different hotel owned by Beacon and assured her that she would be promoted to assistant general manager by June 1988.

In January 1988 Knox placed plaintiff in charge of the hotel while he went out of town. In February 1988 plaintiff informed Knox that she was pregnant. According to the complaint, in February 1988 Knox dissuaded plaintiff from applying for the director of sales position at Days Inn, again assuring her that she would be promoted to assistant general manager in June 1988. Knox again placed plaintiff in charge of the hotel in April 1988 while he went out of town.

In June 1988 plaintiff, then five months pregnant, had a meeting with Knox to express her concern over the promotion to assistant general manager. Plaintiff alleges that during the meeting Knox again assured plaintiff that she would be promoted. Knox went on vacation for two weeks during June and left plaintiff in charge of the hotel. Following Knox's return, plaintiff met with Knox to discuss the promotion to assistant general manager, at which time Knox alleged told her to "be patient and maybe next year, after you return from your maternity leave, we can discuss my training you for a position for assistant general manager."

On July 26, 1988, plaintiff told Caren Lynn, defendant's personnel manager, that Knox was treating her unfairly with respect to the "promised promotion to assistant general manager." On that same day, plaintiff, Caren Lynn, and Knox met to discuss plaintiff's charge of unfair treatment and the promotion. Plaintiff asked Knox why she had not been promoted to assistant general manager. Plaintiff claims that Knox stated, "Even if I were to fill the position, I would not consider you, Colleen, a candidate for the position due to your expected maternity leave." Both Knox and Lynn denied that such a statement was made. Knox dep. at 121–22; Lynn dep. at 45, 52. Plaintiff claims that Caren Lynn then said, "Art, you can't say that. That's sex discrimination," and that

Knox replied, "It is my hotel, and I will say what I want."

Plaintiff then notified defendant that she was resigning as of July 28, 1988, and that the reason for the resignation was the defendant's sex discrimination, which created intolerable working conditions and amounted to constructive discharge. On September 2, 1988, plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights and notified defendant of this action. Plaintiff alleges that defendant and its representatives retaliated against her by contesting her unemployment compensation benefits, intimidating and harassing her, and threatening to institute a civil suit against her for monetary damages and injunctive relief.

On August 1, 1989, plaintiff filed a five-count complaint in the Circuit Court for the County of Wayne. The case was removed to this court August 23, 1989, on the basis of diversity jurisdiction. The parties agree that Michigan substantive law applies. Counts II and V were dismissed in the court's February 6, 1990 order. In the remaining counts, plaintiff Colleen Storch claims sex discrimination (Count I) and breach of contract (Count III). Her husband, plaintiff Michael Storch claims loss of consortium (Count IV).

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is material and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." [Citation omitted]. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law

Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250,

106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

## ANALYSIS

### I. COUNT III: BREACH OF CONTRACT

This court, in a memorandum opinion dated April 23, 1990, denied defendant Beacon's motion for summary judgment as to Count III of the complaint. The court found that a genuine issue of material fact remained regarding whether a discharge for cause relationship existed between plaintiff and defendant. Defendant subsequently filed a motion for reconsideration, and that, too, was denied by this court. However, defendant has renewed its motion for summary judgment as to Count III of the complaint in light of the recent Michigan Supreme Court decision in *Rowe v. Montgomery Ward & Co., Inc.*, 437 Mich. 627, 473 N.W.2d 268 (1991).

Upon revisiting the issue, the court finds that plaintiff's breach of contract claim is actually a claim for constructive discharge. Plaintiff has alleged such a claim, and it will be addressed by the court later in this opinion. The *Rowe* decision, as well as many other breach of employment contract actions, was based on the fact that an employee was terminated by the employer. In the present case, it is undisputed that plaintiff resigned from her position at Days Inn. Thus, it is not necessary to analyze the employment contract between the parties and to determine whether it was breached. Defendant is entitled to summary judgment on the breach of contract claim.

### II. COUNT I: SEX DISCRIMINATION

#### A. Failure to Promote

Michigan's Elliott–Larsen Civil Rights Act, Mich.Comp.Laws Ann. § 37.2202, states in relevant part:

1. An employer shall not:

(a) fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of ... sex.

(b) limit, segregate, or classify an employee or an applicant in any way which deprives or intends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of ... sex.

Pursuant to Mich.Comp.Laws Ann. § 37.-2201(d), " 'sex' includes, but is not limited to pregnancy, childbirth, or a medical condition related to pregnancy or childbirth...."

In an employment discrimination case involving a failure to promote, the employee must first establish a *prima facie* case of discrimination. If the employee succeeds in proving the *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the action against the employee. Subsequently, if the employer carries its burden, the plaintiff must then have an opportunity to prove that the reasons offered by the defendant were a mere pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

In *Burdine* a female employee sued her employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for failing to promote her to a supervisor's position which had been vacant for six months. *Id.* at 250, 101 S.Ct. at 1092. A male employee from another division of the defendant agency was hired for the position. *Id.* at 251, 101 S.Ct. at 1092. The Court stated, "[t]he plaintiff must prove by a preponderance of the evidence that *she applied for an available position* for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.*

at 253, 101 S.Ct. at 1094 (emphasis added). The Court added

"[i]n the instant case, it is not seriously contested that [the employee] has proved a *prima facie* case. She showed that she was a qualified woman who sought *an available position,* but the position was left open for several months before she finally was rejected *in favor of a male....*"

*Id.* at 253 n. 6, 101 S.Ct. at 1094 n. 6 (emphasis added). This analysis is commonly referred to the disparate treatment approach to discrimination cases.

■ Michigan case law follows the same analysis. A plaintiff may establish a *prima facie* case of sex discrimination under the disparate treatment analysis by showing that: (1) she belongs to the protected group, (2) she applied for an available position for which she was qualified, and (3) she was rejected under circumstances giving rise to an inference of unlawful discrimination. *Pomransky v. Zack Co.*, 159 Mich.App. 338, 344, 405 N.W.2d 881 (1987).

■ Assuming her allegation is true, i.e., that Knox told her that even if he were to fill the position she would not be considered for a promotion because of her expected maternity leave, plaintiff has failed to present a *prima facie* case of sex discrimination. The court makes this finding based on one unique fact to which both parties agree, i.e. that the position to which plaintiff was not promoted was never offered to anyone, male or female. It is further undisputed that plaintiff never applied for the position of assistant manager at the hotel. The parties also agree that, to this day, no one holds this position at this hotel. Thus, plaintiff cannot show any disparate treatment.

■ Michigan courts have recognized another method of establishing a *prima facie* case of employment discrimination—by showing intentional discrimination—in cases in which employees have been discharged.[2] *Brewster v. Martin Marietta*

---

**2.** The United States Supreme Court in *Burdine* discussed only the disparate treatment theory in that sex discrimination case alleging a failure to

promote. The Court discusses "intentional discrimination" as a feature of the third step of the discrimination analysis, which occurs after the

*Aluminum Sales, Inc.*, 145 Mich.App. 641, 654–55, 378 N.W.2d 558 (1985) (plaintiff alleging sex discrimination); *Jenkins v. Southeastern Mich. Chapter, Am. Red Cross*, 141 Mich.App. 785, 793–95, 369 N.W.2d 223 (1985) (plaintiff alleging race discrimination); *Schipani v. Ford Motor Co.*, 102 Mich.App. 606, 617, 302 N.W.2d 307 (1981) (plaintiff alleging age discrimination). To establish a *prima facie* case of intentional discrimination, each plaintiff was required to prove 1) that he or she was discharged, 2) that the individual defendant discharging him or her was predisposed to discriminate against the protected group, and 3) that the individual defendant discharging him or her had acted on that predisposition in discharging the plaintiff.

In the instant action plaintiff was not discharged from her position; rather, she resigned. However, Michigan's Elliot–Larsen Civil Rights Act prohibits many actions in addition to discharge, i.e. "fail[ing] or refus[ing] to hire, or recruit ... or otherwise discriminat[ing] against an individual," Mich.Comp.Laws Ann. § 37.2202(a), and "limit[ing], segregat[ing] or classify[ing] an employee ... in any way which deprives or intends to deprive the employee ... of an employment opportunity, or otherwise adversely affects the status of an employee or applicant ..." *Id.* at § 37.-2202(b).

The court has found no Michigan case law which uses the intentional discrimination analysis in a failure to promote case. However, in adapting and using the intentional discrimination analysis in a failure to promote case, this court believes that in order to prove a *prima facie* case, plaintiff must first show that he or she applied for a vacant position. Such a requirement in a failure to promote case is the equivalent of the first element in the discharge cases— that the employee was, in fact, discharged. An employment discrimination claim for failure to promote simply cannot stand absent proof that a position was available and that the employee applied for it.

In the instant action plaintiff never applied for the position of assistant manager at the hotel. Thus, this court cannot reach the issues of whether defendant was predisposed to discriminate against the protected group and whether defendant acted on that predisposition. If the job of assistant manager had been vacant and plaintiff had applied for it, then the court could continue the analysis under the intentional discrimination theory.

Because plaintiff has failed to establish a prima facie case using either the disparate treatment analysis or the intentional discrimination analysis, defendant is entitled to summary judgment on plaintiff's sex discrimination charge for failure to promote.

**B. Constructive Discharge**

 Count I of the complaint also alleges a claim for constructive discharge. Constructive discharge may be found in situations in which working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have been compelled to resign. *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982). A finding of constructive discharge will depend on the facts of each case, and such a claim requires inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee. *Id.* In order to show that he or she has been constructively discharged in a civil rights action, the employee must show discrimination plus aggravating circumstances. *Jenkins*, 141 Mich.App. at 796, 369 N.W.2d 223.

Plaintiff contends that after Knox learned of plaintiff's pregnancy, he

> gave her unfair job assignments, yelled at her, intimated [sic] her, embarrassed her in front of co-workers, caused her to leave the hotel property in tears on one occasion, ... made a joke about her physical appearance caused by her pregnancy in front of another co-worker, reneged on his approval of a vacation day, and refused to continuing [sic] training

---

plaintiff has established a *prima facie* case and after the defendant has presented a legitimate

reason for the action. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094.

or considering her for a promotion for the position of General Manager. Plaintiff's Resp. at 19–20. Plaintiff contends that she was, in effect, forced to resign from "an extremely hostile work environment." *Id.* at 20.

The court finds that the parties have presented disparate facts regarding whether working conditions were so difficult or unpleasant that a reasonable person in plaintiff's shoes would have been compelled to resign. Therefore, defendant's motion for summary judgment on this claim in Count I must be denied.

### COUNT IV: LOSS OF CONSORTIUM

Plaintiff Michael Storch's claim for loss of consortium is derivative of plaintiff Colleen Storch's claims. Because two of Colleen Storch's claims remain in this suit, the defendant is not entitled to summary judgment on Michael Storch's loss of consortium claim.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's motion for summary judgment as to the portion of Count I which relates to sex discrimination for defendant's failure to promote plaintiff is GRANTED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment as to the portion of Count I which relates to constructive discharge is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment as to Count III, breach of contract, is GRANTED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment as to Count IV, loss of consortium, is DENIED.