**Mary Jane STEMPLE, et al., Plaintiffs,**

v.

**CITY OF DOVER, et al., Defendants.**

**No. 5:96 CV 2265.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 31, 1997.

Nancy Grim, Kent, OH, for Plaintiffs.

Philip J. Weaver, Jr., Gretchen A. Hirschauer, Smith, Marshall & Weaver, Cleveland, OH, Thomas G. Watson, Dover, OH, R. Sean Grayson, Andrew J. Love, Worthington, OH, Sandra Mendel Furman, Columbus, OH, for Defendants.

*MEMORANDUM OPINION
AND ORDER*

DOWD, District Judge.

Before the Court are the motions to dismiss filed by defendant Ohio Council 8, American Federation of State, County and Municipal Employees, AFL–CIO (hereafter, "OC8") (Docket No. 8) and defendant Local 2250, American Federation of State, County and Municipal Employees, AFL–CIO (here-

---

after, "L2550") (Docket No. 10).[1] Plaintiffs have filed a combined response to the two motions (Docket No. 15), and each defendant has filed its reply (Docket Nos. 27 and 28). For the reasons set forth below, the motions are granted in part and denied in part.

## I. BACKGROUND

On October 18, 1996, the three plaintiffs, Mary Jane Stemple, Susan K. Solvey, and Carol Sue Skodney (hereafter, "plaintiffs") filed a complaint against the City of Dover, Ohio, OC8 and L2550. The plaintiffs, female employees of the City and members of the bargaining unit represented by OC8 and L2550, asserted claims of sex discrimination under Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, et seq.; under the Equal Pay Act, 29 U.S.C. § 206(d) and § 216(b); and under the Ohio Civil Rights Act, O.R.C. § 4112.02 and § 4112.99. They alleged exhaustion of all administrative remedies.[2]

Plaintiffs allege that they are Utility Billing Clerks for the City of Dover, each having been employed in that position for over ten years. (Complaint ¶ 8). Of the approximately 65 persons employed by the City in bargaining unit positions, only four are women, including the three plaintiffs. (Complaint ¶ 9). Plaintiffs assert that they are the lowest paid hourly employees of the City and that all positions occupied by males, including unskilled positions limited to probationary employees, are accorded a higher rate of pay. Male employees whose work requires equal skill, effort and responsibility and similar working conditions are paid $2.26 to $2.88 per hour more than plaintiffs. (Complaint ¶ 10).

Plaintiffs allege that they have participated in collective bargaining negotiations wherein they unsuccessfully sought redress for the pay inequity. They further allege that equity increases were granted for male employees during the collective bargaining. (Complaint ¶¶ 11–12). Plaintiffs claim that the disparate pay policy constitutes a pattern and practice of sex discrimination in compensation for City employees (Complaint ¶ 13), that their role as wage earners is disparaged, that they are treated as second-class employees (Complaint ¶ 14), and that the defendants have maintained these practices with malice, with conscious disregard for plaintiffs' rights, or with reckless indifference to those rights (Complaint ¶ 15).

Plaintiffs seek (1) an order that they be accorded the same pay as that accorded to similarly situated males; (2) appropriate back pay and adjustment of benefits, with interest; (3) liquidated damages under the Equal Pay Act equal to the amount of unpaid compensation; (4) compensatory damages of $30,000 each on their claims under Title VII and the Ohio Revised Code; (5) punitive damages of $30,000 each against the two unions; and, (6) reasonable costs and attorney fees.

The two unions filed their motions to dismiss and subsequently filed their answers to the complaint (Docket Nos. 9 and 11). The City filed its separate answer and cross-claims against the two unions (Docket No. 22).[3]

## II. STANDARD FOR MOTION TO DISMISS

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–

---

1. These two motions, although separately filed by different counsel, are identical.

2. Right to sue letters were issued by the Equal Employment Opportunity Commission on May 31, 1996. Plaintiffs assert that "[d]efendants expressly waived the right-to-sue period until October 20, 1996." (Complaint ¶ 7). Defendants apparently do not contest this assertion. Nor do the defendants challenge plaintiffs' claims on the ground of failure to exhaust administrative reme-

dies, that is, on any failure to include the unions in the EEOC charges. The Court can only presume that the unions agree that administrative remedies have been pursued and exhausted with respect to them.

3. Both unions have also filed motions to dismiss the City's crossclaims against them. (Docket Nos. 23 and 24). These motions are treated in a separate Memorandum Opinion.

02, 2 L.Ed.2d 80 (1957) (footnote omitted)). When a complaint is challenged under Fed. R.Civ.P. 12(b)(6), its allegations should be construed favorably to the plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and its factual allegations, "construed as to do substantial justice," Fed.R.Civ.P. 8(f), must be accepted as true. *See United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232–33; *Conley,* 355 U.S. at 48, 78 S.Ct. at 103. *See also Hospital Bldg. Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976) ("take as true the material facts alleged"). The sufficiency of a complaint, however, is a question of law, *Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987), and the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987) (citations omitted).

In general, notice pleading under the Federal Rules "do[es] not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103 (failure of complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient ground for dismissal of the suit) (footnote citing Fed.R.Civ.P. 8(a)(2)). Except for two specific instances as provided by Fed.R.Civ.P. 9(b) for fraud and mistake, notice pleading under Fed.R.Civ.P. 8(a) does not require greater particularity. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 167–69, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (greater particularity not required even where municipal liability is alleged).

On a motion to dismiss for failure to state a claim, where matters outside the pleadings are considered, however, the standard of review for summary judgment under Rule 56 is appropriate. *Friedman v. United States,* 927 F.2d 259, 261 (6th Cir.1991) (citing *Rog-*

*ers v. Stratton Industries, Inc.,* 798 F.2d 913, 915 (6th Cir.1986) (distinguishing the standards of review for Rule 12(b)(1) and 12(b)(6) motions)).

### III.  DISCUSSION

Both OC8 and L2550 have attached to their motions to dismiss the affidavit of Patricia A. Moss, First Vice President of OC8, along with relevant parts of both the union constitution and the collective bargaining agreement between the unions and the City. As a threshold matter, the Court notes that it will not consider these documents and, therefore, has no need to treat the motions as Rule 56 motions. Summary judgment practice shall be permitted in good time. At this point, the sole issue is the sufficiency of plaintiffs' complaint with respect to the unions.

### A.  No Private Cause of Action Lies Against a Union Under the Equal Pay Act

The Equal Pay Act amendments ("EPA") to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.,* prohibit discrimination on the basis of sex in compensation for equal work. Section 206(d) provides in relevant part:

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsec-

tion, reduce the wage rate of any employee.

(2) No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection.

Enforcement provisions for the EPA are set forth in 29 U.S.C. § 216. This section provides, in relevant part:

(b) *Any employer who violates section 206 or section 207 of this title shall be liable to the employee or employees affected* in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. .... *An action to recover the liability prescribed [herein] may be maintained against any employer* (including a public agency) in any Federal or State court of competent jurisdiction *by any one or more employees* for and in behalf of himself or themselves and other employees similarly situated.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. (Emphases added).

■ Relying on the express language of Section 216, federal courts have generally held that only employers, not unions, can be held liable in private civil actions for violations of the EPA. *See, e.g., Denicola v. G.C. Murphy Co.,* 562 F.2d 889, 893–94 (3d Cir. 1977); *Koski v. Midwest Printing Co.,* Nos. 4–85–1523, 4–85–1524, 1986 WL 6099, at *2 (D.Minn. March 25, 1986); *Lyon v. Temple University,* 507 F.Supp. 471, 474–75 (E.D.Pa. 1981); *Tuma v. American Can Co.,* 367 F.Supp. 1178 (D.N.J.1973).

Accordingly, to the extent that OC8 and L2550 seek dismissal of the claims brought against them under the Equal Pay Act, 29 U.S.C. § 206, their motions are granted.[4]

**4.** Of course, this ruling does not affect plaintiffs' claims against the City under the EPA. Those

## B. Exhaustion of Internal Union Remedies

■ The unions assert that the plaintiffs are barred from maintaining any action against them because the plaintiffs did not first exhaust internal union remedies.

Vacating part of a remedial order which precluded claims subject to union grievance procedures, the Ninth Circuit agreed with the employee-plaintiffs that the order improperly restricted their right to recover under Title VII. Extrapolating from a decision by the Supreme Court, the Ninth Circuit stated:

Title VII is silent on the need to exhaust contractual remedies or the effect of invoking union grievance procedures. *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 572 (9th Cir.1973). Courts have stated, however, that Congress intended Title VII to be a separate and distinct mode of recovery.

A Title VII plaintiff will therefore not be denied relief if he or she initiates a grievance proceeding prior to bringing a civil rights suit. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 59–60, 94 S.Ct. 1011, 1024–25, 39 L.Ed.2d 147 (1974); *Oubichon,* 482 F.2d at 572. This same policy argues strongly in favor of permitting a Title VII claimant to recover even if he or she failed to exhaust contractual remedies.

*Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 932 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).

In this case, it is apparently undisputed that the plaintiffs never attempted, except by way of the regular collective bargaining process, *See,* Complaint ¶¶ 11–12, to employ any union or contractual remedies available to them. Under the teachings of *Alexander* and *Williams,* however, this is not a bar to plaintiffs' viable claims against OC8 and L2550.

Accordingly, to the extent that the motions of OC8 and L2550 seek dismissal of the

claims remain viable.

entire complaint for failure to exhaust internal union remedies, the motions are denied.

### C. Failure to State Claims Against the Unions

OC8 and L2550 argue that the plaintiffs have failed to state claims against them under the EPA, Title VII, and Ohio's Civil Rights Act.

Although arguing that the EPA does not apply to them as unions, both OC8 and L2550 further assert that the EPA claim, if able to be brought against them, must be dismissed for failure to state a claim. Since the Court has already agreed with the unions that they cannot be sued in a private right of action brought under the EPA, to that extent this argument is moot.

■ The unions argue that the Title VII claim must fail because of the plaintiffs' failure to specify any job classification or name any male employees to whom they are comparing themselves. In support of this proposition, defendants quote *Grant v. Pfizer, Inc.*, 683 F.Supp. 41 (S.D.N.Y.1988), as follows:

> ... Plaintiff has offered no evidence on this issue, but only the conclusory statement that she "believes, based upon knowledge gained as a personnel supervisor at PFIZER, that because of ... sex, she was paid far less while employed by PFIZER than other [sic] white male employees of PFIZER who were performing similar functions." ... To raise a triable issue, plaintiff must, at a minimum identify by names or job titles the men whom she alleges received higher pay for substantially equal work.

*Id.* at 43 (internal citations omitted).

This case is entirely inapplicable to the present situation. *Grant* was decided on a motion for summary judgment. Immediately before the quoted passage, the court set forth the requirement that, in the wake of a well-supported motion for summary judgment, the plaintiff must come forward with admissible evidence that she was paid less than similarly situated males, an issue on which she bears the burden of proof. Having failed in that respect, the plaintiff in

*Grant* could not survive the summary judgment motion.

The instant case is before the Court on motions to dismiss. Plaintiffs' complaint satisfies the requirement that it make a short, plain statement of the claims so as to put the defendants on proper notice.

Although, as already noted, the EPA by its terms prohibits the plaintiffs from pursuing against the unions an equal-pay-for-equal-or-comparable-work claim, the language of Title VII does not contain that same prohibition. In fact, Title VII expressly provides that a "person aggrieved" may pursue claims against both the "employer" and a "labor organization," among others. if they have intentionally discriminated against that person. 42 U.S.C. § 2000e–5(g).

The Court feels compelled to note at this point that in asserting their purported entitlement to dismissal of both the EPA and the Title VII claims, the unions argue as if the only type of wage discrimination claim which can be brought is one alleging failure on the part of an employer to pay women and men equal compensation for equal (or comparable) work. This is, of course, the only type of claim that can be brought under the EPA and, as already noted, unions are not liable in private civil actions under the EPA.

Title VII, however, permits both equal-pay-for-equal-work claims *and* general wage discrimination claims, namely, claims that women have been paid less just because they are women. For this latter type of claim, there is no requirement that a plaintiff show comparators. The Supreme Court has recognized both types of wage discrimination as cognizable under Title VII:

> ... We must ... avoid interpretations of Title VII that deprive victims of discrimination of a remedy, without clear congressional mandate.
>
> Under petitioners' reading of the Bennett Amendment [42 U.S.C. § 2000e–2(h) ], only those sex-based wage discrimination claims that satisfy the "equal work" standard of the Equal Pay Act could be brought under Title VII. In practical terms, this means that a woman who is discriminatorily underpaid could obtain no

relief—no matter how egregious the discrimination might be—unless her employer also employed a man in an equal job in the same establishment, at a higher rate of pay. Thus, if an employer hired a woman for a unique position in the company and then admitted that her salary would have been higher had she been male, the woman would be unable to obtain legal redress under petitioners' interpretation. Similarly, if an employer used a transparently sex-biased system for wage determination, women holding jobs not equal to those held by men would be denied the right to prove that the system is a pretext for discrimination. Moreover, to cite an example arising from a recent case, *Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702 [98 S.Ct. 1370, 55 L.Ed.2d 657] (1978), if the employer required its female workers to pay more into its pension program than male workers were required to pay, the only women who could bring a Title VII action under petitioners' interpretation would be those who could establish that a man performed equal work: a female auditor thus might have a cause of action while a female secretary might not. Congress surely did not intend the Bennett Amendment to insulate such blatantly discriminatory practices from judicial redress under Title VII.

*County of Washington v. Gunther,* 452 U.S. 161, 178–79, 101 S.Ct. 2242, 2252–53, 68 L.Ed.2d 751 (1981); *Henry v. Lennox Industries, Inc.,* 768 F.2d 746, 752 (6th Cir.1985) (quoting *Gunther,* 452 U.S. at 168, 101 S.Ct. at 2247, for the proposition that sex-based wage discrimination claims "can be brought under Title VII even though no member of the opposite sex holds an equal but higher paying job").

**5.** Plaintiffs also allege that they are paid a lower rate of pay than "male employees whose work requires equal skill, effort and responsibility and similar working conditions[.]" (Complaint ¶ 10). This, of course, is a pure EPA-type claim, and can be pursued under the EPA only against the City but not, as already noted, against the unions.

**6.** While at first blush it may appear inconsistent to prohibit plaintiffs from suing the unions under the EPA while allowing them to sue on essentially the same set of facts under Title VII. the Court believes that there really is no inconsistency

■ Plaintiffs' complaint alleges that defendants "have repeatedly espoused stereotypical and, disparaging views of the work of Plaintiffs *and the role of women as wage earners, and treated Plaintiffs as second-class employees.*" (Complaint ¶ 14, emphasis added). In other words, plaintiffs allege that one of the reasons they are paid less than *men* would be paid, if there ever *were* any men in their position, is simply because they are women and, presumably, are "only" the second income for their households. This allegation is sufficient to support a claim under Title VII.[5]

As made clear by 42 U.S.C. § 2000e–2(c)(3), if the unions, in the context of collective bargaining, have espoused the attitude which plaintiffs allege in Paragraph 14 of the complaint and have thereby "cause[d] or attempt[ed] to cause [the City] to discriminate against [the plaintiffs] in violation of [that] section[,]" then the unions may be liable for Title VII discrimination. *See, e.g., Marquart v. Lodge 837, Intern., Ass'n of Machinists and Aerospace Workers,* 26 F.3d 842 (8th Cir.1994) (in order to state a Title VII claim of sex discrimination against union, member was only required to allege that the union caused or attempted to cause the employer to discriminate). While plaintiffs might have been more explicit in their pleading, that is, by pleading the "caused or attempted to cause" language, this Court concludes that the complaint can be broadly read to include that allegation.

In other words, under Title VII, plaintiffs can sue both the City and the unions on a claim that they are paid less than men, simply because they are women. Any one, or all, of the defendants can be liable in damages for such acts.[6]

when the two statutes are analyzed in their relevant contexts. The EPA is an amendment to the Fair Labor Standards Act, whereas Title VII is a civil rights act. The FLSA was designed to ensure certain minimum labor standards with an eye toward protecting workers in general from conditions which endanger both the national health and well-being as well as the free flow of commerce. Although individuals are important within the statutory framework, the real aim is to protect workers as a group. The Civil Rights Act, on the other hand, is specifically aimed at

Accordingly, although the unions cannot be sued in a private right of action under the EPA, they can be sued and ultimately held liable for wage discrimination under Title VII. To the extent that the unions' motions seek dismissal of plaintiffs' Title VII claim for wage discrimination, the motions are denied.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part the motions to dismiss filed by the two union defendants. To the extent the complaint alleges a claim under the Equal Pay Act, it is dismissed as to the unions (but not as to the City). To the extent the complaint alleges wage discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, and Ohio Revised Code Chapter 4112, it survives the motions to dismiss.

IT IS SO ORDERED.

---

protecting individuals. For that reason, civil rights statutes are typically broadly construed to serve that purpose.

7. As defendants admit in their motions, the Ohio Supreme Court has held that federal case law interpreting Title VII is generally applicable to claims involving violations of Ohio's Civil Rights Act. *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981). O.R.C. § 4112.02(C)(2) makes it an unlawful employment practice for unions to discriminate on the basis sex by, for example, adversely affecting a woman's employment status, wages, hours, or employment conditions. Since the Title VII claim survives against the unions, it follows that the state claim also survives.