Janet DOUGLAS, Plaintiff,

v.

MITZELFELD'S, INC., a Michigan corporation, Defendant.

No. Civ.A. 96–72957.

United States District Court, E.D. Michigan, Southern Division.

Aug. 28, 1997.

---

Cary S. McGehee, Royal Oak, MI, for plaintiff.

Andrew T. Baran, Troy, MI, for defendant.

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BORMAN, District Judge.

The instant action was filed by Plaintiff Janet Douglas on June 27, 1996, alleging in Count I that Defendant had discriminated against her under Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and in Count II, that Defendant had discriminated against her under the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, Plaintiff's claims allege a denial of equal pay, and constructive discharge.

On May 14, 1997, Defendant Mitzelfeld's, Inc. filed the instant Motion for Summary Judgment. The Court, having reviewed the briefs filed and the arguments presented at a hearing held August 14, 1997, will grant Defendant's Motion for Summary Judgment.

*Background:*

Defendant Mitzelfeld's, Inc. presently operates a department store located in Rochester, Michigan selling clothing for men, women, and children, as well as home furnishings. (Plaintiff's Brief at 1 n. 2). Mitzelfeld's had previously operated from multiple store locations.

During the relevant time periods of this case, the Rochester store was owned and managed by the Mitzelfeld family; the mother Diana, and the sons Bradley and Lamonte (Monte) Mitzelfeld. William Mitzelfeld, Diana's husband, and Bradley and Monte's father, was the former operator of the store(s). During a portion of Plaintiff's tenure with Defendant, William Mitzelfeld was involved in ownership and management; he retired from management in 1985 or 1986. (Douglas Dep. at 23–24). During the relevant time periods of this case, Monte Mitzelfeld oversaw the men's department, while his mother Diana Mitzelfeld oversaw the woman's department.

Plaintiff Janet Douglas was initially hired by Defendant in 1962 as a part-time salesperson. (Plaintiff's Brief at 1). Thereafter, Plaintiff Douglas left Defendant for employment at another company. She was rehired by Mitzelfeld's in 1966. By 1969, Plaintiff had become the manager/buyer for the children's department in Mitzelfeld's Rochester store. (Plaintiff's Brief at 1).

In 1976, Plaintiff again left Mitzelfeld's, this time to relocate to Florida. (Plaintiff's Brief at 2). In 1978 Plaintiff returned to Michigan, and she once again sought employment with Defendant. Mitzelfeld's rehired Plaintiff for a second time, initially as a "floating" manager, and later as a manager in Defendant's Birmingham location.

In 1980, Plaintiff went on maternity leave from Mitzelfeld's. When she subsequently returned, she was employed as the manager/buyer of the children's department in the Rochester store. This is the position Plaintiff held during the relevant times of this litigation.

As a manager/buyer of the children's department, Plaintiff's duties included: (1) buying—Plaintiff purchased the inventory to be sold in the children's department, and went on about 6 purchasing trips annually; (2) supervising—there were approximately 8–12 workers in her department; (3) interviewing and hiring sales clerks; (4) training, scheduling, and disciplining sales clerks; (5) conducting inventory; (6) doing markdowns; (7) doing return-to-vendors (RTV's); and (8) selling children's wear. (Douglas Dep. at 31–36, 37–39).

The relevant facts which form the basis for Plaintiff's Complaint start in 1983 when Keith Saltsman was hired by Defendant. (Defendant's Brief at 3). Saltsman was hired into the men's department as a manager/buyer at a salary of $500 per week, the same amount Plaintiff was receiving at the time. Saltsman's duties included: (1) buying—for the men's clothing section only (e.g. suits, sport coats, topcoats), with about 5 purchasing trips annually; (2) supervising about 8 sales clerks; (3) hiring, training, disciplining and scheduling clerks in the men's section; (4) doing markdowns; (5) conducting inven-

tory; and (6) selling men's wear. (Saltsman Dep. 25–34).

In the years subsequent to his hire, Saltsman received increases in his base salary at a rate higher than Plaintiff. The disparity of pay between the two reached $314.50 per week (not including bonuses) at the time Plaintiff left Defendant's employ in 1994. (Plaintiff's Brief at 13).

Plaintiff asserts that she became concerned about a potential pay differential in early 1994 when Saltsman allegedly made the comment that "I'm certainly glad my wife doesn't have to work." (Douglas Dep. at 49–50). This comment suggested to Plaintiff that if Saltsman received a salary sufficient to support a wife and four children, he must therefore be earning more than her.

Approximately one month later, in March of 1994, Plaintiff confronted Defendant's management with what she felt was an improper pay disparity. In a meeting with Monte and Diana Mitzelfeld, Plaintiff requested a raise based on the fact that Saltsman was being paid more than her. Monte Mitzelfeld explained that Saltsman was being paid more because his sales volume was substantially higher than Plaintiff's; (1) Saltsman outsold Plaintiff by $2,436,688 between July of 1986 and April of 1994; (2) his sales were always at least double those of Plaintiff's, in each year, and (3) between 1987 and 1993, he sold an average of $256,748 per year more than Plaintiff. (*See* Defendant's Brief at 4).

At that meeting, Diana Mitzelfeld allegedly responded to Plaintiff's request for a raise by stating: "oh, what, isn't your husband working?" (Douglas Dep. at 47). Plaintiff took this response to mean that she, as a woman, would not receive a salary increase because her husband could support her. An alternative interpretation of Mrs. Mitzelfeld's response would be that Plaintiff's pay scale was the most that Mitzelfeld's could afford for her children's department position, and that Mrs. Mitzelfeld thought that Plaintiff would have been able to accept that since her husband was also working, to wit, their combined income would be adequate. At any rate, Plaintiff did not follow up on Mrs. Mitzelfeld's remark by asking her what she

meant by that question. The Mitzelfelds concluded by informing Plaintiff that they would not raise her salary to equal Saltsman's.

For several years prior to this meeting, Plaintiff had been applying for other work. (Douglas Dep. at 29–31).[1] Further, on the same day of the above-discussed meeting with the Mitzelfeld's, Plaintiff had received a call, prior to the meeting, from a Senior Vice President at Jacobson's Department Stores offering her a position at that company. Plaintiff claims that as a result of the meeting with the Mitzelfeld's, and the conditions at work, she had pursued the opportunity with Jacobson's although, all things being equal, she wished to remain with Defendant. Plaintiff gave Defendant notice that she was leaving for another position as of April 1994.

*Standard for Summary Judgment:*

The Court is being asked to grant Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. A motion for summary judgment is properly granted where there is no genuine issue as to a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law . . . ." 477 U.S. at 248, 106 S.Ct. 2505. The burden is on the moving party to establish that no material facts exist such that a reasonable jury could find only for the moving party based on the evidence presented. 477 U.S. at 247–48, 106 S.Ct. 2505. This burden can be met if the petitioner establishes "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P.

56(e). When ruling upon the motion, the Court must examine the evidence presented in the light most favorable to the non-moving party. *Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229 (6th Cir.1990).

*Discussion:*

Plaintiff's two count Complaint can be summarized as raising three claims: (1) sexual discrimination premised upon disparate treatment; (2) intentional sexual discrimination; and (3) constructive discharge as the result of a hostile work environment. The Court will examine each of these in turn.

Plaintiff has raised claims under both federal and state anti-discrimination laws, however, Michigan courts look to the Federal Title VII Statute when interpreting the Elliott–Larsen Statute. *See Rabidue v. Osceola Refining Co.,* 805 F.2d 611 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Jones v. Pepsi–Cola Metropolitan Bottling Co., Inc.,* 871 F.Supp. 305 (E.D.Mich.1994). Thus, the Court may consider the arguments presented in this action jointly.[2]

## I. Sexual Discrimination

Under Title VII a party may bring both an equal-pay-for-equal-work claim and a general claim of wage discrimination. *Stemple v. City of Dover,* 958 F.Supp. 335 (N.D.Ohio 1997). This proposition was recognized by the Supreme Court in *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). In *Gunther,* the Court stated that Title VII was broader than the Equal Pay Act. The Court ruled that Title VII provided a cause of action for those persons who could establish that their employer held a discriminatory intent to pay them less. *Id.* 452 U.S. at 178–79, 101 S.Ct. 2242. Thus, a person who

---

1. Plaintiff stated she had started looking for other work in 1990 because she was dissatisfied with her pay. (Douglas Dep. at 29–31).

2. Michigan's Elliott–Larsen Statute states:
 (1) An employer shall not:
 (a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to . . . compensation . . . because of . . . sex. . . .
 M.C.L. § 37.2202(1).

Title VII provides:
(a) It shall be an unlawful employment practice for an employer—
 (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation . . . because of such individuals . . . sex. . . .
42 U.S.C. § 2000e–2(a).

cannot identify a co-worker performing a substantially similar job can still recover under Title VII if they can establish that the employer had a discriminatory practice of paying a lower wage based on sex. This provides a remedy not available under the Equal Pay Act. Such a finding is consistent with the Supreme Court's view that Title VII "prohibit[s] all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of … sex…." *Id.* 452 U.S. at 180, 101 S.Ct. 2242, *quoting Franks v. Bowman Transportation Co.,* 424 U.S. 747, 763, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

■ Therefore, the Court must analyze Plaintiff's claims to determine if she has presented a *prima facie* case under two separate theories: (1) equal-pay-for-equal-work (disparate treatment); and (2) intentional discrimination. If Plaintiff presents a *prima facie* case under one or both theories, the analysis for each will merge because the burden shifts to Defendant to present a legitimate non-discriminatory reason for the pay differential. *See McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Jenkins v. Southeastern Michigan Chapter, American Red Cross,* 141 Mich.App. 785, 369 N.W.2d 223 (1985). This justification applies equally to either of Plaintiff's theories.

■ Once the employer has come forward with a non-discriminatory reason, "the Plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals,* 29 F.3d 1078, 1083 (6th Cir.1994). Although faced with a claim of alleged discrimination based on age, in contrast to the instant case involving a claim of discrimination based on sex, the holding of *Manzer* is also relevant to this case:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually initiate his discharge, or (3) that the stated reasons were insufficient to initiate discharge."

*Manzer,* at 1084. See also, *Barnhart v. Pickrel, Schaeffer & Ebeling,* 12 F.3d 1382, 1390 (6th Cir.1993).

In the instant case, Defendant Mitzelfeld's, a retail department store, dependant upon sales to produce income, has set forth a legitimate non-discriminatory reason for the pay differential—the significantly higher sales volume produced by Saltsman. Plaintiff has failed to demonstrate by evidence that her employer's explanations were "factually false."

Accordingly, this Court grants Defendant's Motion for Summary Judgment.

As the Supreme Court pointed out in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1089): "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." In *Burdine,* the Supreme Court concluded:

> When the plaintiff has proved a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the non-discriminatory reasons for its actions.

*Burdine,* 101 S.Ct. at 1097.

In the instant case, Defendant Mitzelfeld's has clearly explained the non-discriminatory reason for its refusal to raise Plaintiff's pay to equal Saltsman's pay.

Setting forth a more detailed analysis of this case:

### A. Plaintiff's Prima Facie Case

#### 1. Disparate Treatment (Equal–Pay–for–Equal–Work)

■■ "The analysis of a claim of unequal pay is essentially the same under both the Equal Pay Act and Title VII." *Sunstrom v. Schering–Plough Corp.,* 856 F.Supp. 1265, 1272 (E.D.Tenn.1994), *citing Odomes v. Nucare Inc.,* 653 F.2d 246, 250 (6th Cir.1981). Plaintiff must show:

> Defendant "pays different wages to employees of opposite sexes 'for equal work

on jobs the performance of which require equal skill, effort and responsibility, and which are performed under similar working conditions.' "

*Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *see* 29 U.S.C. § 206(d)(1).

■ When bringing a general disparate treatment claim, the analysis is based on a "similarly situated" individual. *See Coleman–Nichols v. Tixon Corp.,* 203 Mich.App. 645, 513 N.W.2d 441 (1994). In a wage discrimination case, the points of similarity must necessarily be the work being performed. Thus, Title VII or Elliott–Larsen's standard is not necessarily less rigid than the EPA.

Regardless, "Congress did not intend through use of the phrase 'equal work' to require the jobs be identical." *Odomes,* 653 F.2d at 250 (citation omitted). The Court must look for substantial equality between the positions based on an overall comparison of the duties performed. *Id.; see Timmer v. Michigan Dept. of Commerce,* 104 F.3d 833 (6th Cir.1997). In the present case, Plaintiff has shown that Saltsman, a male employee, was paid more than she was. (*See* Plaintiff's Brief at 11–12). Thus, the issue is whether this male worker received this higher wage in a position which was comparable to that of Plaintiff.

Plaintiff has chosen Saltsman as her comparison for her position and duties. Neither party disputes that Saltsman earned more than Plaintiff. The question is whether Plaintiff is sufficiently similarly situated to Saltsman to provide a meaningful comparison. There are a number of comparison points to consider:

(1) Selling: Both Saltsman and Plaintiff sold merchandise from the floor of Mitzelfeld's, a retail department store. However, Saltsman sold men's clothing, and Plaintiff sold children's clothing.

(2) Buying: Plaintiff bought for the entire children's department while Saltsman was the buyer for a limited portion of the men's department (e.g. sport coats and suits). (Monte Mitzelfeld Dep. At 27–29).

(3) Managing: Both Saltsman and Plaintiff were considered managers of their departments. Saltsman, however, shared this duty to some degree with Monte Mitzelfeld. Plaintiff oversaw approximately 12 employees and Saltsman 10, both hired, trained and disciplined clerks.[3]

(4) Scheduling: Plaintiff scheduled the sales clerks for the entire children's department; Saltsman shared the scheduling duty with Monte Mitzelfeld. (*See* Monte Mitzelfeld Dep. at 16–19).

(5) Markdowns/Inventory: Both Plaintiff and Saltsman conducted inventory for their areas and performed markdowns when necessary.

(6) Store Closing: Defendant alleges that Saltsman had responsibility for occasionally closing the store; this testimony is subject to question by the testimony of store manager Saad. (Saad Dep. at 21–22)

(7) Hours Worked: Defendant claims that Plaintiff only worked 40 hours per week while Saltsman worked 42.

The factors listed above lend some support to Plaintiff's argument that her position was similar with regard to the skeleton procedural duties. The substance of their duties— fleshing out the sales aspect, in particular— will be discussed, *infra.*

For purposes of the present motion, Plaintiff has presented sufficient evidence that her duties and Saltsman's were comparable. Thus, Plaintiff has presented a *prima facie* case of "equal-pay-for-equal-work."

*2. Intentional Discrimination*

■ Title VII provides protection not provided for in the Equal Pay Act. The EPA requires a comparison with other similarly situated workers, and essentially leaves unprotected a plaintiff who is subjected to blatant intentional discrimination where no comparator male employee exists. Since *Gunther, supra,* a plaintiff employee has been able to bring a claim under Title VII to show that she is the victim of intentional dis-

---

**3.** Saltsman's Tailor Shop duties are not relevant as he assumed them in June of 1994 after Plain-

tiff had left. (Saltsman Dep. at 37).

crimination. *Gunther*, 452 U.S. at 178–80, 101 S.Ct. 2242. *See also Boyd v. Madison County Mut. Ins. Co.*, 653 F.2d 1173 (7th Cir.1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982).

■ For a claim of intentional discrimination under Title VII and Michigan's Elliott–Larsen Civil Rights Act Plaintiff must show: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) that the person responsible for the decisions was predisposed to discriminate against her; and (4) that the person actually acted on that predisposition. *Perkins v. Regents of the University of Michigan*, 934 F.Supp. 857, 863 (E.D.Mich.1996); *Coleman–Nichols.*, 203 Mich.App. at 651, 513 N.W.2d 441, 445–46.

The first two elements can be assumed at this point. Plaintiff is a member of a protected class, and her lower wage is an adverse action in her employment. The issues are whether Plaintiff can show that the Defendant's decision makers, Diana, Monte and Bradley Mitzelfeld, were predisposed to pay her less based on her sex, and that they actually acted upon that disposition.

The aforementioned statement made by Diana Mitzelfeld at the time Plaintiff requested a raise in March of 1994, "oh, what, isn't your husband working?", *supra* page 654, is ambiguous, and occurs largely in isolation from any other comments. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.1993), *cert. denied*, 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993); *Chappel v. GTE Prods. Corp.*, 803 F.2d 261, 268 n. 2 (6th Cir.1986) (ambiguous statement is too abstract), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987).

A sexist comment by Defendant relied upon by Plaintiff, was a 1976 statement of then-operator William Mitzelfeld:

When I was going to leave in 1976 they were trying to convince me to stay and the one comment that he made to me was I want to tell you something, little girl.

When you're in the real world and you're up for a promotion with another girl, another woman, and she gets the job because her chest is bigger than yours then you're going to find out what the real world is like

(Douglas Dep. at 54).[4] It must be noted that this comment was made eighteen years prior to Plaintiff's resignation from Mitzelfeld's, and additionally, by an individual who had not been involved in management for more than eight years prior to Plaintiff's resignation.

Plaintiff's deposition records additional statements by Diana Mitzelfeld that Plaintiff asserts support her claims of discrimination. In neither of the two instances set forth hereafter did Plaintiff provide a time frame for the statements:

"She came downstairs once after she just had a conference with the ladies' department and she came over and she said to me you really have to treat these ladies like children and repeat everything to them every day because they can't remember anything."

(Douglas Dep. at 94). This statement of Mrs. Mitzelfeld, made to Plaintiff, another management person, dealt with sales clerks. Thus, Plaintiff was not one of those persons about whom Diana Mitzelfeld was speaking.

A second instance testified to the Plaintiff was:

"And one time we were talking at a manager's meeting and we were trying to decide, you know, what would be a good first markdown on any item and she basically said make it—you don't really have to make it a 20 or a 25 or a 30 percent off. You can make it either 18 percent, 19 percent or 21 percent, just so it ends in an odd number because the women aren't quick enough to figure out how much they're getting off."

(Douglas Dep. at 94). This statement, which was made at a manager's meeting between Plaintiff and Mrs. Mitzelfeld, dealt with wom-

---

4. Additional comments allegedly made by William Mitzelfeld to Plaintiff Douglas in 1983 or 1984 were: "One time when getting a review he commented twice that little girl, you're very well paid for what you do," (Douglas Dep. at 54); and

"When they were going to bring Laurie Saad over as general store manager of Rochester he told me that she would be my boss and if she couldn't handle the job, he would hire a man to do it." (Douglas Dep. at 55).

an customers; nothing was directed against Plaintiff or women employees, in general.

The children's department employees were dealt with by Mrs. Mitzelfeld, and the male menswear department employees were dealt with by Monty Mitzelfeld. Plaintiff's testimony confirms this managerial division, when she noted that Mrs. Mitzelfeld didn't oversee Mr. Saltsman, or reprimand him, "because Monty would get mad and Monty and his mother would have words right on the floor." (Douglas Dep. at 96).

This Court recognizes that a business' utilization of a woman to oversee women employees does not provide that enterprise with freedom to discriminate against female employees. However, the above-quoted statements were not directed against Plaintiff, and do not provide evidence of discrimination against Plaintiff.

Significantly, Plaintiff Douglas testified that Diana Mitzelfeld never made derogatory comments to her because of her gender. (Douglas Dep. at 55–56).

Plaintiff attributes no derogatory comments based on gender to Brad or Monte Mitzelfeld, or to Laurie Saad, the manager of the Rochester store. (Douglas Dep. at 55).

Plaintiff also cites to the deposition testimony of other female store employees as evidencing the anti-female employment environment at Mitzelfelds. Cheryl Gritenas testified that Diana Mitzelfeld was

> kind of off the wall, so to speak, reprimanding you for—she thought nothing of pulling you over on the floor in front of your people and embarrassing you....

(Gritenas Dep. at 25). Jennifer Hall admitted that her difficulties with Diana Mitzelfeld were personal: "Basically she didn't like me and so she made working there very difficult." (Hall Dep. at 15). These statements merely indicate that Diana Mitzelfeld may not have been easy to work for.

In addition Cheryl Gritenas testified:

> A: ... Of course, Mrs. Mitzelfeld conveniently wasn't in the building when they [the male employees] were throwing Frisbees and so forth either, so—

> Q: Why do you say conveniently not in the building?

> A: Well, they wouldn't do that if she was in the store I'm sure....

(Gritenas Dep. at 27). This testimony that the men would not throw frisbees if Diana Mitzelfeld was in the store, contradicts Plaintiff's claim that Mrs. Mitzelfeld's strict standards applied only to female employees. These statements of female sales clerks do not support Plaintiff's claim that Defendant was predisposed to discriminate against Plaintiff based upon her sex.

### B. Legitimate Business Reason

█ Under the burden shifting analysis applied to claims brought under Title VII, once Plaintiff has presented a *prima facie* case Defendant must provide a legitimate nondiscriminatory reason for any disparity in pay. Section 2000e–2(h) specifically provides that those affirmative defenses available in the Equal Pay Act can be used to justify a pay disparity in a Title VII action. *See Gunther*, 452 U.S. at 168–71, 101 S.Ct. 2242.

The Equal Pay Act provides that an employer may pay different rates based upon "seniority, merit, quantity or quality of production, or any other factor other than sex...." *Gunther*, 452 U.S. at 169, 101 S.Ct. 2242; *see also* 29 U.S.C. § 206.

The Court must examine the deposition testimony to determine how Mitzelfeld's owners determined pay rates:

(1) Personal Sales. "Personal productivity is paramount." (Monte Mitzelfeld Dep. at 41, 77–83).

(2) Net Sales. (*See* Monte Mitzelfeld Dep. at 77–83; Diana Mitzelfeld Dep. at 87–88).

(3) Working With Others. (Monte Mitzelfeld Dep. at 39, 48).

(4) How the Department is Doing: this factor looks at such things as increase of sales, quality of people and turnover in department. (Monte Mitzelfeld Dep. at 40–41, 47–48).

(5) Gross Margin. (Monte Mitzelfeld Dep. at 42).

(6) Profit Margin. (Monte Mitzelfeld Dep. at 47).

(7) Quality of the Manager. (Monte Mitzelfeld Dep. at 58–59).

(8) Merit: Defendant's employment manual states "... increases, if granted, are based primarily on merit as well as the responsibility of the position assigned and not on length of service." (Plaintiff's Brief Ex. 1).

In the present case, Defendant justifies the disparity between Saltsman and Plaintiff based on the fact that Saltsman outsold Plaintiff. It bears emphasizing that the business entity in question is a retail sales establishment where profits are produced by sales.

Several factors should be noted. Saltsman personally sold twice as much as Plaintiff in each year of comparison. (Defendant's Brief at 4). Further, the men's department had greater gross sales, net sales, and profit margin in every year of comparison to the children's department. (Plaintiff's Brief at 11–12). Thus, in four of the eight non-subjective categories, Saltsman or his department exceeded Plaintiff and her department. "Merit" in a retail business translates primarily into one's ability to sell and produce a profit.

### C. Pretext

■ Defendant has relied upon the above factors to justify its decision to pay Plaintiff less than Saltsman. Plaintiff must now come forward with evidence to show that the legitimate reasons offered are merely a pretext for discrimination.

Plaintiff notes that Defendant did not provide its employees with an express pay system or scale, or use a commission basis. (*See* Saltsman Dep. at 62, 70, 72; Golding Dep. at 16; Gritenas Dep. at 21–22, 42; Hall Dep. at 17). The explanation proffered by Defendant in support of the differential was that raises were based upon "merit," and Defendant has translated "merit" to sales and profits. This is in no way an unjustifiable explanation in a retail sales business. Thus, although "Courts considering [a merit] defense have generally required a structured

evaluation procedure with objective standards, and have deemed a system based on subjective criteria insufficient," *E.E.O.C. v. Shelby County Government*, 707 F.Supp. 969, 984 (W.D.Tenn.1988), *citing Maxwell v. City of Tucson*, 803 F.2d 444, 447 (9th Cir.1986) (other citations omitted), the Court finds that the explanations provided set forth objective standards, to wit, merit, tied closely to sales and profits.

Thus, the objective criteria in evaluating merit in this case was sales and profits. Plaintiff was an employee in a retail store where selling was the key to success. Defendant has asserted that because Saltsman was a much better salesperson than Plaintiff, he was provided higher pay.[5] The non-subjective factors on which. Defendant claims to rely support its contention on pay.

Plaintiff relies upon comparisons between other female workers and male workers whose positions she claims were comparable, to demonstrate an overall discriminatory practice of Defendant to pay women less. Plaintiff compares Saltsman to Kathy Trombley, former ladies department manager, and she compares Scott Bryson, assistant manager/manager in the men's department, to Heidi Golding, manager of ladies shoes and the Junior Department, Cheryl Gritenas, manager of the ladies department, and Jennifer Trescone–Hall, manager of the junior's department. (Plaintiff's Brief at 8–17).

This evidence would be most relevant to establish that Defendant's proffered explanation is a pretext. *See Boyd*, 653 F.2d at 1178 (evidence regarding the treatment of other workers is relevant to establish pretext); *see also E.E.O.C. v. Ford Motor Co.*, 98 F.3d 1341, No. 95–3019, 1996 WL 557800 (6th Cir. Sept.30, 1996) (table). However, in none of these instances has Plaintiff provided any evidence that any female sold more than any male comparator. Thus, Plaintiff's evidence does not undermine the business reason offered by Defendant.

---

5. Plaintiff also makes an argument that men's clothing costs more, and therefore, Saltsman would naturally sell more. However, this, if anything, shows Plaintiff's position is not comparable to Saltsman. Further, this provides Defen-

dant with a non-sex based reason why it paid Saltsman more than Plaintiff. Plaintiff has never argued that she could not have worked in the Men's Department had she wanted to.

Defendant has provided a legitimate business reason for the pay differential between Plaintiff and Saltsman, and Plaintiff has not shown that this reason is a pretext. Therefore, Plaintiff's claims under both Elliott–Larsen and Title VII must be dismissed.

## II. Constructive Discharge

 Plaintiff alleges that her departure from Defendant's Rochester store in April 1994 amounted to a constructive discharge. Whether a constructive discharge has occurred "is, at least partially a question of law." *Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir.1987). A constructive discharge occurs where the working conditions are so unpleasant, unreasonable or difficult that a reasonable person in the employee's position would feel compelled to resign. *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir.1991); *Wolff v. Automobile Club of Michigan,* 194 Mich.App. 6, 15, 486 N.W.2d 75, 80 (1992). Whether a constructive discharge has occurred depends on the facts of each case. *Kreis v. Charles O. Townley, M.D. & Assoc., P.C.*, 833 F.2d 74, 82 (6th Cir.1987); *Jenkins v. Southeastern Michigan Chapter, American Red Cross,* 141 Mich.App. 785, 796, 369 N.W.2d 223, 229 (1985).

 Plaintiff must show more than discrimination alone; she must also show "aggravating circumstances." *Geisler v. Folsom,* 735 F.2d 991, 996 (6th Cir.1984); *Jenkins,* 141 Mich.App. at 796, 369 N.W.2d 223, 229. Further, unequal pay standing alone does not amount to a constructive discharge. *Fisher v. Conrad,* 985 F.2d 559, No. 92–5297, 1993 WL 20184 (6th Cir. Jan. 29, 1993) (table), *citing Irving v. Dubuque Packing Co.,* 689 F.2d 170, 172 (10 Cir.1982).

Much of the evidence relied upon by Plaintiff to show aggravating circumstances must be discounted. The comments made by William Mitzelfeld, who retired around 1986, are irrelevant to Plaintiff's working environment in 1994.

The isolated and undated incidents attributed to Diana Mitzelfeld, were directed primarily to customers or sales clerks do not support Plaintiff's claims of a hostile work environment directed against her as a female. The statement of Mrs. Mitzelfeld at the final meeting before Plaintiff accepted her position at Jacobson's did not create a hostile work environment. Taken together, these incidents did not create an environment that would amount to justifying a "constructive discharge."

Plaintiff's claims that she intended to stay at Mitzelfeld's are weak in light of the fact that Plaintiff had begun looking for another position in 1990. (Douglas Dep. at 64). Plaintiff's being offered another job at Jacobson's, just prior to her resignation might well undercut her claim that the hostile environment at Mitzelfeld's forced her to resign. This fact might also undercut her allegation that she would have stayed at Mitzelfeld's until she retired. However, neither of those two facts need be relied upon by the Court.

Plaintiff has failed to present facts that establish that she was subject to such intolerable working conditions that a reasonable person would have been compelled to resign in a similar situation.

*Conclusion:*

For the reasons stated above, the Court GRANTS Defendant Mitzelfeld's, Inc.'s Motion for Summary Judgment.

SO ORDERED.